**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 39049/39156**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2013 Opinion No. 30** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: June 3, 2013** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **KRISTINA MARIE QUINTANA aka KING,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge; Hon. Cheri C. Copsey, District Judge.

Judgment of conviction and unified sentence of fourteen years, with three years determinate, for grand theft, affirmed; judgment of conviction and aggregate, unified sentence of twenty-eight years, with eight years determinate, for burglary and two counts of grand theft by possession of stolen property, affirmed; order denying Idaho Criminal Rule 35 motion for reduction of sentences, affirmed.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Kristina Marie Quintana aka King appeals from her judgments of conviction for grand theft, burglary, and two counts of grand theft by possession of stolen property in two cases consolidated for appeal. Specifically, she contends the sentences imposed after her guilty pleas to the charges are excessive. Quintana also appeals from the order denying her Idaho Criminal Rule 35 motion for reduction of sentences, contending the district court erred in denying her motion. For the reasons set forth below, we affirm.

1

# I.

## FACTS AND PROCEDURE

In March 2010, Quintana, then twenty-two years old, stole her college professor's wallet during class while the professor was briefly out of the room. Quintana used a credit card from the wallet to make purchases at a local gas station and restaurant and to purchase wedding invitations online. After an investigation revealed Quintana was responsible for the theft and fraudulent credit card use, the State filed a complaint charging her with one count of grand theft, Idaho Code §§ 18-2403(1), 18-2407(1)(b), and two counts of grand theft by unauthorized control, I.C. §§ 18-2403(3), 18-2407(1)(b) (hereinafter Case No. 39049). Before she could be arrested, Quintana left Boise for New Mexico.

In December 2010, a Boise resident observed three individuals, two of whom were later identified as Quintana and Shauntel King, appearing to unlawfully enter a neighbor's house. The neighbors returned to find their residence was ransacked and several items were stolen, including a credit card. A search warrant was executed for Quintana and King's residence. Officers recovered various stolen property and other evidence tying Quintana and King to numerous recent home burglaries, theft from vehicles, and instances of mail theft in the Boise area. The evidence indicated the pair stole, among other things, electronics, credit cards, checks, purses, and jewelry and used the credit card and checking account numbers to make fraudulent purchases. For this series of crimes, which the charging document indicated included burglaries from five residences, theft from four vehicles, and thefts from three mailboxes, Quintana was charged with six counts of burglary, I.C. § 18-1401, six counts of grand theft, I.C. §§ 18-2403(1), 18-2407(1)(b), and six counts of grand theft by possession of stolen property, I.C. §§ 18-2403(4), 18-2407(1) (hereinafter Case No. 39156).

In Case No. 39049, pursuant to a plea agreement, Quintana pled guilty to one count of grand theft and the State dismissed the remaining charges. The district court imposed a unified sentence of fourteen years, with three years determinate.

Case No. 39156 proceeded before a different district court judge and, also pursuant to a plea agreement, Quintana pled guilty to one count of burglary and two counts of grand theft by possession of stolen property. The State dismissed the remaining charges. Quintana did not appear at the initially scheduled sentencing hearing, having sent the court a fabricated letter indicating she was unable to travel due to a high-risk pregnancy. After it was established she

2

was not actually pregnant, the sentencing hearing was held and the district court imposed a unified ten-year sentence, with four years determinate, for the burglary conviction. On each of the two counts of grand theft by possession of stolen property, the court imposed a unified fourteen-year sentence, with four years determinate. The court ordered one of the grand theft sentences to run consecutively to the two other sentences, while the other sentences ran concurrently with each other. This resulted in an aggregate, unified sentence of twenty-eight years, with eight years determinate, to run concurrently with the sentence imposed in Case No. 39049. Quintana filed an Idaho Criminal Rule 35 motion for reduction of sentences, which the district court denied.

Quintana timely appealed the judgment of conviction in both cases, as well as the denial of her Rule 35 motion in Case No. 39156. The Idaho Supreme court granted her motion to consolidate the cases on appeal. Shortly before Quintana's appellant's brief was due on a second extension, she made a motion to suspend the briefing schedule and requested the appellate record be augmented with King's presentence investigation (PSI) report and the portion of a letter, both referenced by the district court at sentencing in Case No. 39156. The Idaho Supreme Court denied the motion.

## II.

## ANALYSIS

### A.     Motion to Augment

Quintana contends the Idaho Supreme Court violated her due process and equal protection rights by denying her motion to augment the record with King's PSI report[1] and a letter.[2] We recently addressed a nearly identical argument in *State v. Morgan*, 153 Idaho 618, 620, 288 P.3d 835, 837 (Ct. App. 2012):

> We begin by disclaiming any authority to review and, in effect, reverse an Idaho Supreme Court decision on a motion made prior to assignment of the case to this Court on the ground that the Supreme Court decision was contrary to the state or federal constitutions or other law. Such an undertaking would be tantamount to the Court of Appeals entertaining an "appeal" from an Idaho

---

[1]     In Case No. 39156, the district court indicated at sentencing that after reading King's PSI report and "seeing the interaction" it considered King to also be a "victim" of Quintana.

[2]     Quintana's motion to augment identifies this document as the "remainder of the incomplete letter of support from an unknown author."

3

Supreme Court decision and is plainly beyond the purview of this Court. Nevertheless, if a motion is, in effect, renewed by the movant, and new information or a new or expanded basis for the motion is presented to this Court that was not presented to the Supreme Court, we deem it within the authority of this Court to evaluate and rule on the renewed motion in the exercise of our responsibility to address all aspects of an appeal from the point of its assignment to this Court. Such may occur, for example, if the completed appellant's and/or respondent's briefs have refined, clarified, or expanded issues on appeal in such a way as to demonstrate the need for additional records or transcripts, or where new evidence is presented to support a renewed motion.

Quintana did not file with this Court a renewed motion to augment the record, nor did she present to this Court in her briefing any significant new facts or a new justification for augmentation beyond that already advanced in her motion to the Supreme Court--namely, that the requested PSI report and letter were relied upon by the district court in sentencing. She is, in substance, asking us to determine the Idaho Supreme Court violated her constitutional rights by denying her motion. As it is beyond the scope of our authority, we will not address the issue further.

**B.      Case No. 39156**

**1.      Sentence review**

Quintana contends that given any view of the facts, the individual sentences imposed upon her guilty pleas to burglary and two counts of grand theft by possession, as well as the unified, aggregate sentence of twenty-eight years, with eight years determinate (due to several sentences running consecutively), were excessive. Specifically, she asserts the district court abused its discretion by failing to adequately consider applicable mitigating factors, primarily her mental health. In addition, she contends the district court did not sufficiently consider her traumatic childhood, her "several redeeming characteristics" including her acceptance of responsibility for her actions and agreement to pay restitution to all victims (even for charges she did not plead guilty to), the fact she was pursuing advanced education and was scheduled to graduate from a cosmetology course, and her adoptive family's ongoing support.

Appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such

4

an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

In addition to the considerations above, if the defendant's mental condition is a significant issue, the sentencing judge must also weigh that mental condition as a sentencing consideration. I.C. § 19-2523; *State v. Miller*, 151 Idaho 828, 834, 264 P.3d 935, 941 (2011); *State v. Moore*, 126 Idaho 208, 211, 880 P.2d 238, 241 (1994). Specifically, Idaho Code § 19-2523 requires the court to look at several factors:

> (a) The extent to which the defendant is mentally ill;
> (b) The degree of illness or defect and level of functional impairment;
> (c) The prognosis for improvement or rehabilitation;
> (d) The availability of treatment and level of care required;
> (e) Any risk of danger which the defendant may create for the public, if at large, or the absence of such risk;
> (f) The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the offense charged.

I.C. § 19-2523(1)(a)-(f). A defendant's mental health is only *one* of the factors that must be considered and weighed by the court at sentencing; the statute does not require that a defendant's mental condition be the controlling factor at sentencing, nor does it require the district court to specifically reference all of the factors. *Miller*, 151 Idaho at 836, 264 P.3d at 943; *State v. Strand*, 137 Idaho 457, 461, 50 P.3d 472, 476 (2002). However, the record must show the court adequately considered the substance of the factors when it imposed the sentence. *Miller*, 151 Idaho at 836, 264 P.3d at 943; *Strand*, 137 Idaho at 461, 50 P.3d at 476.

5

On appeal, Quintana contends the district court did not properly take into account her mental illness diagnoses as required by section 19-2523. The relevant information before the district court included a 2011 Idaho Department of Health and Welfare discharge profile and client diagnosis with treatment notes, a 2011 Idaho Standard Mental Health Assessment, a 2005 patient discharge summary and psychiatric admission history (from a hospital in New Mexico), and a 2005 psychological evaluation. The 2005 reports indicate Quintana was diagnosed with oppositional defiant disorder, depression, post-traumatic stress disorder, and polysubstance abuse. The 2011 assessment, conducted by the Idaho Department of Health and Welfare, indicates Quintana was seeking treatment for "a long history of bipolar and depression." Quintana contends the district court dismissed these diagnoses as a "mitigating factor out of hand" and "substituted its own determination in their place." She points to the district court's comment at sentencing that "while [Quintana's] bipolar . . . I would say half the population at this point is bipolar, so--," and the court's assertion that "I don't think this is a mental health issue. I don't think treatment is the issue." Further, the court discounted the assessment, noting Quintana did not tell the psychological evaluators the full extent of her prior criminal history, "so as a result, they . . . decide that what this was instead was bipolar disorder." Quintana argues the district court was "ill-equipped" to offer its opinions as to Quintana's mental health. By comparison, she points to the district court's discussion of her mental health in Case No. 39049, where the court stated it was clear Quintana had psychological issues and needed structured programs and, as a result, imposed a lesser sentence and recommended Quintana receive appropriate treatment.[3]

The Idaho Supreme Court has discussed the adequacy of a district court's consideration of a defendant's mental health in fashioning a sentence on several occasions. In *Strand*, 137 Idaho 457, 50 P.3d 472, the defendant contended he required mental health treatment and, therefore, the district court abused its discretion by sentencing him to prison rather than placing him on probation and requiring that he enter an inpatient treatment facility. Noting the factors articulated in section 19-2523 that a sentencing court must consider if a defendant's mental

---

[3]     Specifically, the district court in Case No. 39049, stated, "I will tell you but for these [psychological] reports it would probably be a five-year sentence, but I'm going to impose a three-year fixed sentence with an eleven-year indeterminate sentence."

condition is a significant factor, the Idaho Supreme Court determined the requirement had been met:

> In this case, the district court continued completion of the sentencing hearing in order to obtain a psychological examination of the Defendant. The record shows that the district court reviewed the report of that examination prior to sentencing the Defendant. In fact, the district court quoted portions of the report during the sentencing hearing. Thus, the district court complied with Idaho Code § 19-2523. The statute does not require that a defendant's mental condition be the controlling factor at sentencing. The defendant's mental condition is simply one of the factors that must be considered and weighed by the court at sentencing.

*Strand*, 137 Idaho at 461, 50 P.3d at 476.

Similarly, in *Miller*, 151 Idaho 828, 264 P.3d 935, the defendant argued the district court inadequately considered his bipolar disorder when imposing sentence. Like in *Strand*, the district court recognized Miller's mental health was a significant factor and, pursuant to statute, ordered a psychological evaluation. At sentencing, the court explicitly referenced the evaluation and quoted from parts of it and concluded that "the evaluation says there is no notable functional impairment inability, no impairment in working with legal representation, and no need for mental health treatment so long as Mr. Miller avoids substance abuse." *Miller*, 151 Idaho at 837, 264 P.3d at 944. On this basis, the Supreme Court determined the district court had "squarely" addressed the elements in section 19-2323. *Miller*, 151 Idaho at 837, 264 P.3d at 944. The Supreme Court also noted the district court's statement that "[b]ipolar is certainly a condition. It is certainly a diagnosis. I don't doubt that you have it, but it is not an excuse. There are bipolar people that succeed every day in society." *Id*. Although recognizing this statement had no bearing on section 19-2523, the Supreme Court surmised it demonstrated the judge did consider Miller's mental health. "Rejection of mental illness as a significant factor does not indicate that mental health was not considered," the Supreme Court noted, concluding the appropriate factors, including Miller's mental health, were properly considered. *Miller*, 151 Idaho at 837, 264 P.3d at 944.

Likewise in this case, the district court adequately considered Quintana's mental health in fashioning a sentence. Like in *Strand* and *Miller*, the district court indicated it reviewed and considered the evaluations attached to the PSI report, as well as other relevant information in the report, and discussed the findings therein. In regard to the 2011 mental health assessment, the

district court noted the report indicated a diagnosis of bipolar disorder, but the court stated it found the assessment "rather interesting because they made it clear that a large number of things here were based upon your own self report. . . . [A]nd, of course, you are not very honest even with the mental health provider because you don't tell them the full extent of your criminal activity prior to this." As a result of this, the court determined, the 2011 assessment listed a diagnosis of bipolar disorder, as opposed to the diagnoses listed in the 2005 evaluations.[4] Based on its doubts regarding the accuracy of the 2011 assessment, which also included the fact in-depth testing was not conducted, the district court focused on the 2005 diagnoses, quoting from the evaluation:

> And this psychologist opined . . . "This is a young woman of average intelligence without marked psychiatric difficulty who is believed to be a low risk for engaging in dangerous behavior and quite amenable to treatment. In contrast she has a five-year history of loyalty to a deviant peer group, drug use and some antisocial behavior that has contributed to her now underdeveloped academic skills. It is suspected that most of her past and current difficulties are the end result"--and this is the part that I thought was interesting--"the end result of lenient parenting practices that may have led [Quintana] to believe that there would never be consequences for many of her actions."
>     And I think . . . his actual diagnosis was again spot on, disruptive behavior disorder, adolescent antisocial behavior as well as cocaine use. And she also was at the same time diagnosed with oppositional defiant disorder.

Thus, it is evident the court discussed Quintana's apparent bipolar diagnosis, albeit likely not in the manner Quintana would have preferred. The court acknowledged the diagnosis, but ultimately concluded Quintana's mental health (or a lack of treatment) was not the impetus behind her criminal actions.[5] This conclusion arose not only from the court's doubts regarding the 2011 assessment, but also from the court's observation of Quintana's behavior both before

---

[4]     The district court in Case No. 39049 also noted that the psychological evaluations were themselves contradictory as to Quintana's conditions.

[5]     Quintana and King stated the reason behind their crime spree was to obtain money for "rent, food, and Christmas gifts." Interestingly, the PSI investigator noted:

> Ms. Quintana admitted that she felt money was an "addiction" for her, and commented, "Whenever I don't have money, I feel a need to do what I need to get money." She explained she would "never have less than $1000 in my wallet," even as a child. She added, "I got used to having that. When I don't, I freak-out, get mad, and will do whatever I have to do to get the money."

8

and after her arrest, her demeanor before the court, and her prior criminal activity. Quintana cites no authority for the proposition that it is outside the ken of the sentencing court to make such a finding--especially where there are no findings in the psychological evaluations specifically linking Quintana's criminal actions *in this case* to her mental illness. As the *Miller* Court noted, "Rejection of mental illness as a significant factor does not indicate that mental health was not considered." *Miller*, 151 Idaho at 837, 264 P.3d at 944.

Furthermore, that the district court in this case did not assess the psychological evidence in exactly the same manner as the district court in the companion case does not amount to an abuse of discretion. It is well settled that district courts are given broad discretion in fashioning a sentence and the standard applied is whether the sentence is reasonable under *any* view of the facts, not in comparison to another sentence. In addition, the circumstances of this case were significantly more severe than in the companion case--a fact Quintana fails to mention in arguing her sentences were excessive. In this case, she was originally charged with *eighteen* felony counts, with evidence pointing to her culpability in additional uncharged incidents, and pled guilty to three counts, while in Case No. 39049, she was initially only charged with three felonies and pled guilty to one. On the whole, the district court adequately considered Quintana's mental health pursuant to section 19-2523.

Quintana also contends the district court did not sufficiently consider other mitigating evidence: her traumatic childhood (specifically her rape at age twelve), her "several redeeming characteristics" including her acceptance of responsibility for her actions and agreement to pay restitution to all victims (even for charges she did not plead guilty to), the fact she was pursuing advanced education and was scheduled to graduate from a cosmetology course, and the ongoing support of her adoptive family. However, in sentencing Quintana, the district court indicated it reviewed the PSI report, which included the above information, and specifically considered the objectives of sentencing. It also discussed Quintana's background and the troubling nature of the crimes, in addition to her mental health issues as discussed above.

As the district court pointed out, Quintana and King embarked on a crime spree wherein they victimized approximately thirty people through a series of home and vehicle break-ins and mail theft. Victims were forced to repair their damaged property, cancel financial accounts, repair their credit history, file insurance claims, and deal with the resulting mental trauma from having their homes, vehicles, and property invaded. In addition, two days prior to the scheduled

9

sentencing in this case, a letter purporting to be from a doctor in New Mexico was dropped off at the Ada County Courthouse Clerk's office and forwarded to the district court. The letter stated Quintana was undergoing a "high-risk" pregnancy, was in New Mexico, and could not travel. Surveillance footage from the court house showed it was Quintana (who was "smiling and laughing" at the time) and another individual who dropped off the letter. Quintana did not appear at sentencing and the district court issued a bench warrant for her arrest.

Shortly after her arrest, Quintana complained to jail staff of medical problems, claiming she was pregnant and presenting the staff with a copy of the letter she delivered to the clerk's office purporting to be from her doctor. She was transported to a hospital emergency room, where medical personnel determined she was not pregnant, nor had she been recently. An investigation revealed the doctor's letter was forged. Quintana subsequently wrote a letter to the sentencing court apologizing for submitting the letter, but claiming she had not forged the letter herself and was not aware it was a forgery when she submitted it. Quintana continued to claim she was pregnant. Jail personnel indicated Quintana's deceit resulted in wasted time and resources and costs to the county for the unnecessary trip to the emergency room. In discussing the incident at sentencing, the district court expressed its belief that this behavior evidenced Quintana's continued desire and willingness to manipulate others through deceit, to attempt to escape consequences for her actions, and to obtain preferential treatment.

The district court also referenced Quintana's attitude and demeanor at the sentencing hearing, including "smirk[ing]" and "smiling" while her behavior was discussed, and observed that Quintana showed "absolutely zero remorse" and was a "young lady who doesn't care that she's hurt a whole series of people." The court also surmised that Quintana was "probably one of the more manipulative defendants I've seen in front of me."

In addition, the district court discussed Quintana's prior criminal history, noting she had a juvenile record, the details of which were not known by the court. In 2004, she was charged in New Mexico with receiving stolen property, forgery and fraud, the disposition of which was unknown. In 2009, Quintana was charged with two counts of forgery and two counts of identity theft, pled guilty to one count of each, and was placed on probation. In 2010, Quintana was accused of forgery and theft and was charged with grand theft and two counts of grand theft by possession for the incident in the consolidated case to this appeal.

Ultimately, based on the facts above, as well as the court's assessment of Quintana's mental health, the court concluded a significant prison sentence was required: (1) for the protection of the community given the "undue risk" that Quintana would commit more crimes unless incarcerated; (2) to effect deterrence and rehabilitation, which the court determined would not occur in Quintana's case without an "actual consequence for [her] behavior";[6] (3) given the nature of the crimes, specifically the sheer number of home invasions and number of victims; and (4) based on Quintana's character, including her lack of any remorse for the impact she had on the victims, her continuing deceitful behavior, and the fact she was a multiple offender. In light of these proper considerations by the district court, Quintana fails to meet her burden of demonstrating that, under any reasonable view of the facts, the district court abused its discretion in sentencing her.

## 2. Rule 35

Quintana also contends the district court erred in denying her Rule 35 motion to reduce her sentences in light of new evidence she presented to the court. A motion for reduction of sentence under Rule 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Gill*, 150 Idaho 183, 186, 244 P.3d 1269, 1272 (Ct. App. 2010). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *Gill*, 150 Idaho at 186, 244 P.3d at 1272.

Quintana contends she presented "new" evidence in the form of several additional letters of support from family and friends who discussed her mental health, need for treatment, and their continued support for her. She also submitted a letter from herself discussing her difficulty in obtaining rehabilitative treatment in prison due to her "excessive" sentence. The district court, however, denied her motion in a written memorandum, summarizing the rationale behind its

---

[6] Quintana insists on appeal that the district court did not consider her need for treatment. However, the court specifically noted that once Quintana was incarcerated, additional mental health testing would occur to determine her placement. In addition, the court indicated it hoped Quintana would "take advantage of some of the things that are available to you in the prison system so you can become a productive member."

original sentence and concluding the sentence was still appropriate, especially in light of the primary consideration of protection of society. Specifically, the court indicated it had taken her mental health into consideration, but found there were several aggravating factors that required a significant sentence, including the fact it was, at least, her fourth, fifth, and sixth felony convictions and she had "demonstrated the depth of her criminal thinking" by trying to deceive court and jail personnel as to her alleged pregnancy. The court surmised:

> [T]he magnitude of this crime outweighed Quintana's character and background. Therefore, the Court found that this sentence would promote rehabilitation; there is a need for some punishment that fits the crime before real rehabilitation will be effective. Finally, the Court finds that the crimes themselves simply deserve this punishment. They are serious crimes. She and her co-defendant entered their victims' homes, stole many things, and even trashed their homes.
> The Court finds that this sentence fulfills the objectives of protecting society and achieves deterrence, rehabilitation, and retribution . . . .

On appeal, Quintana contends the district court erred in denying her motion because the letters she submitted to the district court "reveal the depth of impact of [her] mental conditions" and the district court again did not sufficiently consider the mitigating factors and sentencing objectives in light of this new evidence. This evidence, she argues, "indicates an increased need to impose a more lenient sentence, one which would afford [her] the opportunity to participate in programs and then be timely paroled, so that she could apply those lessons in a real-world situation, with the help of her support network of family and friends."

The letters from family and friends Quintana submitted in support of her Rule 35 motion cannot be truly considered "new" as they simply purport to provide additional information as to her mental health, a factor we have already determined was adequately considered by the district court at sentencing. And, as the State points out, any difficulty Quintana may have encountered in immediately obtaining rehabilitative treatment due to the length of her sentence obviously did not alleviate the district court's primary concern in fashioning the sentence it did, which was the protection of the community from a person who committed multiple offenses that were extremely invasive of her victims' homes and possessions, had not shown remorse for her activities, and evidenced deep criminal thinking even after she was arrested and pled guilty to the current charges. On this basis, we cannot say the district court abused its discretion in denying Quintana's Rule 35 motion.

12

C.    **Docket No. 39049**

Quintana contends the district court in this case also abused its discretion by imposing a unified sentence of fourteen years, with three years determinate, upon her guilty plea to grand theft. Specifically, she argues that although this district court properly took into account her mental health issues, it did not sufficiently consider other mitigating factors present in the case. She references the same mitigating factors (besides her mental health) discussed in regard to Case No. 39156 and contends that, because the district court did not mention those factors in imposing sentence, the court lent them insufficient consideration and, therefore, imposed an excessive sentence.

When imposing sentence, the district court indicated it reviewed the PSI report, and considered the objectives of sentencing. The district court was also aware of Quintana's actions in regard to the forged doctor's note, her initial failure to appear for sentencing in Case No. 39156, her continued disruptive behavior in jail, and the large number of residential burglaries, thefts from vehicles, and mail thefts she committed in the companion case. The State also pointed out at the sentencing hearing that after fleeing to New Mexico, Quintana called the investigating detective in the case, repeatedly arguing with the detective as to whether she could even be charged for stealing the credit card and using it without permission, telling the detective, "I'm going to get away with this." Quintana also told investigators that she and her co-defendant intended to "go out like Bonnie and Clyde if they got caught." Ultimately, with this information in hand, the district court determined a one-year rider program would not impose the structure required and opted to imposed a three-year determinate sentence with eleven years indeterminate, indicating it would have imposed five years determinate if not for Quintana's mental health history. The court indicated the lengthy indeterminate portion was necessary in case Quintana continued her behavior, so she would not be able to create new victims. Given the nature of the crime, Quintana's background, and her continued exhibition of deceitfulness, Quintana fails to carry her burden to show this sentence is excessive under any reasonable view of the facts.

### III.

### CONCLUSION

Quintana has not shown the sentences imposed in either case were excessive under any reasonable view of the facts. In addition, the district court did not err in denying her Rule 35

13

motion for a reduction of her sentences in Case No. 39156. Quintana's judgments of conviction and sentences, and the district court's order denying her Rule 35 motion, are affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**