**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 42475/42488**

| | |
|---|---|
| **STATE OF IDAHO,** ) | **2015 Unpublished Opinion No. 521** |
| ) | |
| **Plaintiff-Respondent,** ) | **Filed: June 17, 2015** |
| ) | |
| **v.** ) | **Stephen W. Kenyon, Clerk** |
| ) | |
| **RICHARD GABRIEL BENNETT, aka** ) | **THIS IS AN UNPUBLISHED** |
| **RICKIE; RICHARD GABRIEAL** ) | **OPINION AND SHALL NOT** |
| **BURNETT; RICK G. BENNETT; RICO;** ) | **BE CITED AS AUTHORITY** |
| **RICHIE BENNETT,** ) | |
| ) | |
| ) | |
| **Defendant-Appellant.** ) | |
| ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Judgment of conviction and unified ten-year sentence with five years fixed for felony injury to a child, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Richard Gabriel Bennett was convicted of felony injury to a child in one case and admitted that he violated the terms of probation in another case. In this consolidated appeal, he raises several claims of error, including an argument that the district court erred at sentencing by finding that people who were abused as children are no more likely to engage in child abuse than the general population. He contends that this determination was not supported by evidence in the record and that it is contradicted by social science studies he has submitted on appeal.

1

Bennett was charged with five counts of felony injury to a child, Idaho Code § 18-1501(1), and two misdemeanor counts of injury to a child, I.C. § 18-1501(2). The State also alleged that he was a persistent violator of the law. Bennett and the State entered into a plea agreement wherein he pleaded guilty to a single count of felony injury to a child, the remainder of the charges and the enhancement were dismissed, the State was free to argue the facts of each charge at sentencing, and the State agreed to recommend a unified sentence of ten years in prison with five years fixed.

A presentence investigation report (PSI) was compiled, containing information about the charged conduct and Bennett's mental health. The PSI contains a variety of disturbing reports showing that Bennett horrifically abused his elementary-school-aged daughter for years. They indicate that Bennett physically and psychologically tortured her, that he compelled another child to hurt the victim, and that he even used the family dog to terrorize her.

At the sentencing hearing, defense counsel argued that Bennett's mental health problems and traumatic childhood were mitigating factors. Consistent with that argument, he requested that the court retain jurisdiction.

The district court explained its considerations at sentencing and addressed defense counsel's contentions. In particular, the court addressed the argument that Bennett's allegedly troubled childhood was a significant factor at sentencing:

> I do want to dispel the idea that because your childhood was bad--and I don't know whether it was or it wasn't--it's irrelevant and the reason it's irrelevant is the studies show that that kind of--that the kind of behavior you exhibited is not caused by behavior that occurred in your childhood.
> The fact is the studies show that a child who was abused as a child, whether it was physical, emotional or sexual, is no more likely to do that to their children as anyone else. The two are independent. I know it's popular for people to believe that someone who abuses children [is] doing it because they learned it as a child. That is simply not true. That is not the case. . . .
> So your childhood is not an excuse for what's happened. These were decisions that you made.

Thereafter, the court went on to observe that across history many people had been subjected to terrible trauma and went on to live law-abiding lives. On this basis, the court explained that the view expressed by Bennett, that trauma victims can be expected to engage in

despicable acts of violence, is an affront that to those law-abiding survivors in two respects: it discounts their resilience and it impermissibly excuses the very sort of violence they were subjected to.

After the hearing, the court imposed a unified ten-year sentence with five years fixed, to run consecutively with the sentence in a 2011 case.[1] Bennett appeals, contending that his sentence is excessive.

## II.

## ANALYSIS

Bennett asserts three claims of error. He argues that the court erred by finding that victims of child abuse are no more likely to abuse children than other people are. He also argues that the court erred by concluding that Bennett's mental illness was not a significant factor at sentencing. Finally, he contends that the district court erred by imposing a sentence that is excessive in light of the mitigating evidence he presented.

**A.     The Court Erred by Relying on Facts in Unspecified Studies, but the Error Was Harmless**

We begin by addressing Bennett's contention that the district court erred by finding that "studies show that a child who was abused as a child, whether it was physical, emotional or sexual, is no more likely to do that to their children as anyone else." On appeal, Bennett urges this Court to conclude that the district court's assertion of fact is clearly erroneous. In support of this argument, he cites several studies, some of which analyze an enormous amount of data that has been collected by respected investigators. These studies tend to indicate that children who have been abused are more likely to commit certain offenses later in life.

This Court will not set aside factual findings unless they are clearly erroneous. *State v. Henage*, 143 Idaho 655, 659, 152 P.3d 16, 20 (2007). To be found clearly erroneous, factual findings must be unsupported by substantial and competent evidence. *Id*.

This standard does not authorize this Court to search through scientific journals, weigh the evidence presented in them, and evaluate their methods and reasoning. *See State v. Detweiler*, 115 Idaho 443, 447, 767 P.2d 286, 290 (Ct. App. 1989) (specifically rejecting the view that our standard allows us to "engage in original fact-finding upon conflicting evidence"). Rather, we examine only whether the district court's factual finding was supported by the record.

---

[1]     Bennett admitted that his conduct violated the terms of probation he had been serving since 2011. His probation was revoked and the underlying sentence was imposed.

Here, the record is clear--no studies have been included in any court materials--neither the studies referenced by the district court nor the studies cited by the appellant in his briefing. Moreover, we cannot conclude that the district court took judicial notice of the unspecified studies as it did not identify any particular studies as the ones relied upon.[2]  Accordingly, the district court's finding of fact was not supported by "substantial and competent evidence."

But, this determination does not end our inquiry.  Our Supreme Court has held that judges "are not monks living in cells, but rather people living in society with the ability to see and hear."  *State v. Wallace*, 98 Idaho 318, 320-21, 563 P.2d 42, 44-45 (1977).  Accordingly, under some circumstances, a judge is permitted to use the "knowledge gained from his official position" at sentencing.  *Id*.  Likewise, the United States Supreme Court has held that it "[i]s entirely fitting for the moral, factual, and legal judgment of judges . . . to play a meaningful role in sentencing."  *Barclay v. Florida*, 463 U.S. 939, 950 (1983) (plurality opinion).  Thus, in making sentencing decisions, judges may bring to bear the knowledge gained from their life experience in general and their judicial experience in particular.

In sentencing criminal defendants, judges are required "to accomplish the primary objective of protecting society" and to weigh the goals of deterrence, rehabilitation, and retribution.  *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982).  Idaho appellate decisions indicate the district court has considerable leeway when weighing these considerations.  A few Idaho Supreme Court decisions regarding mental health are good examples.  In *State v. Porter*, 130 Idaho 772, 789, 948 P.2d 127, 144 (1997), the Supreme Court held that a district court may permissibly consider mental health problems as either an aggravating or mitigating factor at sentencing.  The Court recognized that mental health problems may be relevant to future dangerousness (thereby relevant to protecting society) and may be relevant to culpability (which is particularly important to the goal of retribution).  In *State v. Leavitt*, 121 Idaho 4, 7, 822 P.2d 523, 526 (1991), the court considered mental health issues to be mitigating because they might reduce "culpability or blameworthiness."  It does not

---

[2]     The rules of evidence do not apply at a sentencing hearing.  *See* Idaho Rule of Evidence 101(e)(3); *State v. Carey*, 152 Idaho 720, 721, 274 P.3d 21, 22 (Ct. App. 2012) (discussing the standards applicable in sentencing proceedings).  If they did, the district court would have erred by taking judicial notice of these studies.  Bennett was not provided "an opportunity to be heard" as required by Idaho Rule of Evidence 201(e).  Nor do the conclusions of the study appear to be facts that are "not subject to reasonable dispute."

4

appear that counsel in either case presented compelling analytical or statistical evidence showing that the defendant's type of mental health problems might increase future dangerousness or decrease culpability. Rather, it appears that the district courts relied upon their experience and background knowledge. Likewise, in *State v. Miller*, 151 Idaho 828, 837, 264 P.3d 935, 944 (2011), our Supreme Court held that the district court adequately considered a defendant's mental illness when the trial court held that "bipolar is certainly a condition. It is certainly a diagnosis. I don't doubt that you have it, but it is not an excuse. There are bipolar people that succeed every day in society." *Id*. The determination of fact in that case--that mental illness does not invariably cause crime and did not excuse the particular behavior at issue--fell within the proper scope of judicial experience and knowledge.

However, the rule that sentencing proceedings afford the district court a great deal of leeway does not amount to a complete abandonment of the general principle that trial courts should decide issues based upon the evidence that was put before them and that was subject to being challenged or rebutted by the opposing party. Therefore, although the line between impermissible fact-finding and the leveraging of judicial expertise cannot be neatly drawn, there are limits to the district court's use of the background "facts" for which no evidence has been presented. Here, we conclude that the district court exceeded those limits by finding, as facts, certain analytical or statistical information where that information was not properly submitted into evidence or subject to challenge or rebuttal by the parties, and where the finding is on a subject of significant analytical dispute.

Having found error, we note that Idaho courts have not remanded for resentencing when the sentencing error was harmless.[3] Here, we conclude that the erroneous fact-finding was

---

[3] Over time, a variety of standards have been applied. In *State v. Payne*, 146 Idaho 548, 575, 199 P.3d 123, 144, 150 (2008), a death penalty case, our Supreme Court applied harmless error analysis to sentencing proceedings. It considered whether there is a "reasonable possibility the district court would have reached a different sentence" absent the error. *Id*. at 570, 199 P.3d at 145. Later, the Court asked whether there was "reasonable doubt as to whether the inadmissible evidence contributed to [the defendant's] sentence." *Id*. at 575, 199 P.3d at 150. In another case, the Court asked whether any error affected a defendant's substantial rights. *State v. Hanson*, 152 Idaho 314, 324, 271 P.3d 712, 722 (2012) (discussing the import of the district court's failure to order and thus failure to consider a mental health evaluation); *see also State v. Clark*, 146 Idaho 483, 484, 197 P.3d 796, 797 (Ct. App. 2008) (This Court applied the same harmless rule to a case in which the district court failed to comply with mandatory timing provisions and did not afford the defendant the right to allocute. There, we ruled that the error

5

harmless beyond a reasonable doubt because the erroneous fact-finding did not affect the sentence.

The district court's determination of Bennett's sentence did not flow solely from its understanding of what studies had observed. Indeed, the court's citation to studies was framed as an aside. The court wanted to "dispel an idea" that, in its view, was "popular for people to believe." Instead, the court's determination of Bennett's sentence flowed from its view of culpability, an issue within the court's institutional expertise.

The district court explained that it had read the PSI materials and expressly indicated that it "considered" them. These materials included Bennett's description of childhood trauma and several mental health evaluations. Nonetheless, the court was unpersuaded by Bennett's argument linking his childhood trauma and mental health problems to his criminal conduct. The district court explained that the nature of Bennett's conduct tended to show that mental health issues were not the cause of his crime. For example, Bennett targeted just one child for the abuse and was able to refrain from directly abusing another child in the home. Likewise, Bennett was "calm," not impassioned or out of control when he abused the victim.[4] Instead, Bennett's abuse seemed systematic, "calculated," and goal-oriented. He also forced the victim to explain away her injuries and repeatedly falsely report that she herself had mental health problems, on video, in a manner that suggests that he understood that what he was doing was wrong and was fabricating evidence to exculpate himself when he was caught.

Rather than seeing Bennett's conduct as a result of mental health problems, the court viewed it as a series of deliberate decisions to torture a young girl. The court noted that Bennett "has all along realized that this is wrong behavior" and that the mental health reports indicated

---

was harmless because the sentence was imposed after the court was bound by a plea entered pursuant to Idaho Criminal Rule 11(f)(1)(C).).

It is not immediately apparent that these differences in wording amount to applications of a substantively different standard. *See, e.g.*, *State v. Perry*, 150 Idaho 209, 222, 245 P.3d 961, 974 (2010) (observing that there was not much practical difference between the "contribute to the verdict" standard and the "do not affect the substantial rights of the parties" standard). This is especially true because *Perry* appears to hold that all determinations of harmlessness require that this Court make its determination beyond a reasonable doubt. *Id.* at 222, 245 P.3d at 974.

[4]     Bennett videotaped some of the abuse, and the sentencing court was able to view the videos.

6

that Bennett was capable of conforming his conduct to the law. It concluded, "[t]hese were decisions you made. . . . I don't know why you've made the choices you've made, but because you are able to control your behavior, I know it is a choice." These are the sort of judgments about culpability that the district court is required to make under our sentencing laws and authorized to make under constitutional law. *See Barclay*, 463 U.S. at 950; *Toohill*, 103 Idaho at 568, 650 P.2d at 710. These determinations were reached by an exercise of reason and flow from facts found in the record. Accordingly, we find no error in these determinations. More importantly to the disposition of this appeal, we conclude that these determinations, made about a specific defendant and his specific conduct, were the true basis for the court's sentence.

The district court may or may not be correct regarding the aggregate tendencies of people who have been abused as children, but it determined the culpability of the specific defendant before it on the basis of evidence in the record. Accordingly, we conclude that the error in the consideration of studies that are not in the record, and which Bennett was not permitted to challenge, was harmless.

**B.      The District Court Adequately Considered Bennett's Mental Health**

Bennett next argues that the district court erred in its consideration of his mental health. He relies upon I.C. § 19-2523, which provides:

> (1) Evidence of mental condition shall be received, if offered, at the time of sentencing of any person convicted of a crime. In determining the sentence to be imposed in addition to other criteria provided by law, if the defendant's mental condition is a significant factor, the court shall consider such factors as:
>> (a) The extent to which the defendant is mentally ill;
>> (b) The degree of illness or defect and level of functional impairment;
>> (c) The prognosis for improvement or rehabilitation;
>> (d) The availability of treatment and level of care required;
>> (e) Any risk of danger which the defendant may create for the public, if at large, or the absence of such risk;
>> (f) The capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the offense charged.

Under that statute, "if the defendant's mental condition is a significant issue, the sentencing judge must also weigh that mental condition as a sentencing consideration." *State v. Quintana*, 155 Idaho 124, 129, 306 P.3d 209, 214 (Ct. App. 2013). However, "a defendant's mental health is only *one* of the factors that must be considered and weighed by the court at sentencing; the statute does not require that a defendant's mental condition be the controlling factor at

sentencing, nor does it require the district court to specifically reference all of the factors." *Id.* Further, "Rejection of mental illness as a significant factor does not indicate that mental health was not considered." *Miller*, 151 Idaho at 837, 264 P.3d at 944.

In sentencing Bennett, the district court said:

> I want to first address the mental health issues because that seems to be the crux of your defense. I have considered all of the mental health evaluations that have been done in this case. And when I say all, I mean all of the evaluations that have been done. And I do not find the mental health condition to be a significant factor and I'm going to explain why.

Bennett argues that the court used his "capacity . . . to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law," a statutory factor set forth in I.C. § 19-2523(1)(f), as the grounds upon which it concluded that mental health was not a "significant factor." He contends that the court's determination that mental health was not a "significant factor" was erroneous.

We disagree. The district court plainly gave attention to Bennett's mental health problems at sentencing. In that sense, the district court paid attention to mental health as a "significant factor" at sentencing, having thoroughly reviewed the mental health evaluations, which the court discussed at length. We find no support in the record for view that the court rejected expert opinions that Bennett was likely mentally ill. Rather, the court rejected the view that Bennett's mental health was significant in the sense that it was a mitigating factor for sentencing. As partially set forth above, those reasons were (1) the nature of his offense indicated that he was able to control his behavior; (2) his affect when engaging in the crime, much of which is captured in videos Bennett made, indicated that Bennett was calculating; (3) an expert opinion indicated that Bennett "likely does have significant psychiatric difficulties but is embellishing them in part because of the current circumstance. Caution is needed in weighing the relative severity of his symptomatology within this context"; and (4) an expert report indicated that Bennett "was able to appreciate the wrongfulness of his actions at the time these events took place."

While I.C. § 19-2523 requires that, if a defendant's mental health is a significant factor it must be considered for sentencing purposes, that statute does not require that a mental illness always be deemed to reduce a defendant's culpability or require a lighter sentence. Here, the district court clearly gave thorough consideration to evidence of Bennett's mental illness but did

not deem it mitigating. Bennett has shown no violation of the statute nor any findings by the district court that are without evidentiary support in the record. The district court here, as a practical matter, expressly considered each of these.

## C.     Bennett's Sentence Is Not Excessive

Bennett argues that his sentence is excessive in light of his remorse, his experiences as a child, and his mental health problems. We disagree.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case." *Toohill*, 103 Idaho at 568, 650 P.2d at 710. Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Bennett's conduct--terrorizing a young child and causing physical and psychological anguish--was aptly characterized below as torture. Against that backdrop, we conclude that the district court adequately considered each of the mitigating factors and imposed an appropriate sentence. Therefore, upon review of the record, we conclude no abuse of discretion has been shown.

## III.

## CONCLUSION

The district court erred by making a finding that was not supported by any evidence in the record and that did not fall within the institutional expertise of the trial court. That error was harmless, however, because it was not the basis of the court's sentencing determination.

9

Additionally, we conclude that the court did not err by rejecting the contention that Bennett's argument that his mental health and childhood abuse should mitigate his sentence. Finally, we hold that the district court did not abuse its discretion by imposing an excessive sentence.

The judgment of conviction and sentence are affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR.**