**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 45905**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, December 2019 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: May 4, 2020** |
| | ) | |
| **TIMOTHY ISIAH JONES,** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Peter G. Barton, District Judge.

The judgment of conviction of the district court is affirmed.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Sally J. Cooley argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kale D. Gans argued.

---

BURDICK, Chief Justice.

Timothy Isiah Jones appeals his judgment of conviction entered in district court. In February 2018, a jury found Jones guilty of trafficking in heroin under Idaho Code section 37-2732B(a)(6)(C) and possession of drug paraphernalia under Idaho Code section 37-2734A. On appeal, Jones argues the district court erred in admitting evidence at trial that he was on probation. He also argues the district court erred in admitting into evidence a knife found on his person when he was frisked by police officers. Finally, Jones argues the district court abused its discretion during his sentencing by imposing an excessive sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 25, 2017, several officers from the Boise Police Department were conducting surveillance on a trailer home where they suspected a wanted fugitive was staying. The officers were also watching for drug activity, which had been reported in the area.

1

After obtaining permission, one of the officers took up a surveillance position inside a nearby hair salon. Through a window in the hair salon, the officer could see the front door of the trailer no more than 20 to 30 feet from his location. He observed a blue Volvo station wagon parked directly in front of the trailer. The vehicle was running and a male wearing a baseball cap was sitting in the passenger seat. The only other occupant was a pit bull in the back seat.

After a short amount of time had passed, a second man (later identified as Jones) came out of the trailer and opened the driver's door of the Volvo. He reached down underneath the front seat of the vehicle for a few seconds before returning to the trailer. A few minutes later, Jones stepped out of the trailer and yelled to the passenger. Upon being summoned, the passenger exited the vehicle and entered the trailer with Jones. Not long after entering the trailer, the passenger returned to the Volvo, reached in the same spot under the seat as Jones had, retrieved what appeared to be a small black digital scale, and went back inside the trailer. About five minutes later, Jones and the passenger emerged from the trailer, got into the Volvo, and drove away.

As Jones and the passenger drove away, multiple marked and unmarked patrol cars began tailing them at various distances. After one of the officers observed Jones speeding, another officer in a marked patrol car caught up to the Volvo and pulled it over.

As soon as Jones stopped the car, he immediately opened the driver's side door. As the uniformed officer approached the vehicle to contact Jones, he noticed the pit bull with its head hanging out the back window. Concerned about walking past the dog, the officer requested that somebody in the vehicle "grab ahold of that dog." Jones then stepped out of the vehicle with his hands near his waistband, twisting around so that his back faced the approaching officer the entire time. Jones then backed up and reached into the open window of the rear passenger door, where the dog was standing with its head hanging out the window. A second officer ordered Jones to get his hand out of the car and the first officer grabbed Jones's arm to pull him away from the car. Upon being grabbed, Jones dropped to his knees on his own. At that point, the first officer handcuffed Jones.

After walking Jones over to one of the nearby patrol cars, the first officer asked him whether he had any weapons on him. Jones replied that he did not. The officer proceeded to pat down Jones, noticing an object in Jones's right pocket. He asked Jones what was in his pocket

and Jones replied that it was a knife. At that point, the officer pulled the knife out of Jones's pocket and handed it to another officer.

Meanwhile, a different officer removed the pit bull (who was friendly) from the car. The second officer, who was a K9 handler, got out his drug detection dog, which alerted on the open door of the car. The officers then searched the car, finding a black digital scale and a small amount of a substance they believed to be heroin wrapped in aluminum foil.

After searching the car, the officers learned that Jones was on probation, and had waived his Fourth Amendment rights as a condition of his probation. The officers contacted Jones's probation officer who directed them to search him pursuant to the Fourth Amendment waiver. The officers searched Jones and found a plastic bag in his underwear that contained what they suspected to be heroin. The officers arrested Jones after finding the suspected heroin. A State lab later verified that the substance in the plastic bag was 30.96 grams of heroin.

The State charged Jones with trafficking in heroin and possession of drug paraphernalia. The State indicated before trial that it intended to elicit testimony and present evidence that would show that Jones was on probation. Jones objected to any evidence or testimony of his probation being admitted, arguing the probative value of such evidence was substantially outweighed by the danger of unfair prejudice. The district court ruled that the probation evidence was admissible under the Idaho Rules of Evidence.

At trial, the State elicited testimony that Jones was on probation and published to the jury a recording from an officer's on-body video camera, in which the officer can be heard discussing Jones's probation with him. The district court gave the jury multiple limiting instructions related to the evidence that Jones was on probation, explaining that the evidence was only being admitted so they could understand the circumstances surrounding the stop, not for determining whether Jones had committed any crimes.

The State also moved to admit into evidence the knife found in Jones's pocket when he was patted down. Jones objected to the knife being admitted, but the district court overruled his objection, later explaining outside the presence of the jury:

> [Jones's attorney] told me that he objected, and it was on the basis of inflaming the jury. I considered it under Rule 403 and found that there was prejudice; there was not unfair prejudice. And also that, therefore, any unfair prejudice did not outweigh its probative value.

In that regard, knives are commonly used in drug transactions, and it's relevant to show that, and therefore it's also admissible under [Rule] 401.

The jury found Jones guilty of trafficking in heroin and possession of drug paraphernalia. The district court sentenced Jones to a term of 30 years' imprisonment, with 15 years fixed as the mandatory minimum required for his conviction. Jones timely appealed.

## II.     ISSUES ON APPEAL

A. Did the district court err in admitting evidence that Jones was on probation?

B. Did the district court err in admitting the knife Jones was carrying at the time of his arrest into evidence?

C. Did the district court abuse its discretion in imposing a 30-year sentence with a 15-year fixed term?

## III.     STANDARD OF REVIEW

This Court reviews a trial court's evidentiary rulings under an abuse of discretion standard. *State v. Jones*, 160 Idaho 449, 450, 375 P.3d 279, 280 (2016) (citing *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163–64, 45 P.3d 816, 819–20 (2002)). Sentencing decisions are also reviewed using an abuse of discretion standard. *State v. Matthews*, 164 Idaho 605, 607, 434 P.3d 209, 211 (2019) (citing *State v. McIntosh*, 160 Idaho 1, 8, 368 P.3d 621, 628 (2016)).

When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (emphasis in original). Whether evidence is relevant is reviewed de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993). "The determination of whether the risk of unfair prejudice substantially outweighs the probative value of the evidence is within the discretion of the trial court." *State v. Cross*, 132 Idaho 667, 670, 978 P.2d 227, 230 (1999) (citing *State v. Porter*, 130 Idaho 772, 784, 948 P.2d 127, 139 (1997)).

## IV.    ANALYSIS

**A.  The district court did not err in admitting evidence that Jones was on probation.**

Jones argues the district court erred in admitting evidence at trial that he was on probation because it was inadmissible prior bad acts evidence under Idaho Rule of Evidence 404(b).

Under the Idaho Rules of Evidence, all relevant evidence is admissible unless one of the Rules of Evidence, or another rule applicable to Idaho's courts, provides otherwise. I.R.E. 402. Thus, all the other rules of evidence governing admissibility serve as exceptions to the general rule that all relevant evidence is admissible. Idaho Rule of Evidence 404(b) is one such exception.

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." I.R.E. 404(b)(1). Stated another way, evidence of crimes, wrongs, or other acts "is not admissible to show a defendant's criminal propensity." *State v. Johnson*, 148 Idaho 664, 667, 227 P.3d 918, 921 (2010) (citing *State v. Sheldon*, 145 Idaho 225, 227, 178 P.3d 28, 30 (2008)). However, so long as the prosecution in a criminal case provides notice of its intent to produce such evidence, it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." I.R.E. 404(b).

This Court has not yet had occasion to consider whether evidence of a defendant's probationary status constitutes evidence of a crime, wrong, or other act, such that it falls within the purview of Rule 404(b). We conclude that it does. The only way an individual can be put on probation is by being convicted of a crime. Thus, evidence of an individual's status as a probationer is evidence of a prior crime, and necessarily invokes a Rule 404(b) analysis.

We are not alone in concluding that evidence of an individual's probationary status qualifies as evidence of a prior crime for Rule 404(b) purposes. *See State v. Derbyshire*, 201 P.3d 811, 817 (Mont. 2009) ("We begin with the undisputed proposition that evidence of [defendant's] status as a probationer constitutes evidence that he has committed other crimes . . . ."); *State v. Brown*, 699 P.2d 1122, 1127 (Or. 1985) (en banc) ("We believe evidence of the probationary status of a defendant necessarily reveals the fact that the defendant had committed a prior crime."); *cf. U.S. v. Manarite*, 44 F.3d 1407, 1418 (9th Cir. 1995) ("[W]e think it obvious

5

that evidence of a defendant's parole status should be considered evidence of other crimes for purposes of Rule 404(b)").

Having determined that a defendant's probationary status falls within the purview of Rule 404(b), we turn to the two-step analysis that is used to determine whether evidence is admissible under this rule. *State v. Capone*, 164 Idaho 118, 125, 426 P.3d 469, 476 (2018) (citing *State v. Russo*, 157 Idaho 299, 308, 336 P.3d 232, 241 (2014)). First, the evidence must be sufficiently established as fact and must be relevant to a material and disputed issue "other than the character or criminal propensity of the defendant." *Id.* Second, the court must apply the balancing test from Rule 403 to determine that "the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Id.*

As to the first step, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." I.R.E. 401.

We have previously recognized that evidence explaining the actions of police officers during a search and subsequent arrest has a non-propensity purpose. *State v. Yakovac*, 145 Idaho 437, 446, 180 P.3d 476, 485 (2008). For example, in *State v. Yakovac*, we held that testimony about an arrest warrant was admissible to explain why police officers arrested the defendant and searched her vehicle. *Id.* After responding to a call from the defendant about a physical confrontation, the officer learned that the defendant had two warrants out for her arrest on unrelated charges *Id.* at 440, 180 P.3d at 479. The officers arrested her on the outstanding warrants and searched her vehicle incident to arrest, discovering a glass pipe containing methamphetamine residue. *Id.* At trial, defense counsel did not object when two police officers mentioned the outstanding warrants while testifying about the arrest. *Id.* at 440–41, 180 P.3d at 479–80. In a petition for post-conviction relief, the defendant argued that her counsel was ineffective for failing to object to the testimony about the outstanding warrants on the grounds that they were inadmissible under Idaho Rule of Evidence 404(b). *Id.* at 444–45, 180 P.3d at 483–84. Holding that the warrants were admissible for a non-propensity purpose, this Court reasoned that they were not relevant to the possession of methamphetamine charge itself, but for another purpose, to explain why the police searched the defendant's vehicle. *Id.* at 446, 180 P.3d at 486.

6

The State argues that after *Yakovac*, evidence is always relevant in showing the propriety of a search conducted by law enforcement. However, we do not read *Yakovac* so broadly, nor does the present case requires us to do so.

Evidence directed at police officer conduct is not necessarily relevant in every criminal case. Where the evidence presented at trial does not give rise to any indication of impropriety in the officer's actions, evidence explaining the actions would not be relevant. However, police conduct viewed in isolation can create the appearance of impropriety where none exists. Separating actions, or even statements, from the context that surrounds them can distort reality. When evidence that reflects negatively on police conduct is available, defendants often use it to cast doubt on the credibility of the police officer involved or the propriety of his conduct. Likewise, when evidence exists that casts police conduct in a positive light, prosecutors use such evidence to bolster an officer's credibility or to reinforce the propriety of his conduct. Therefore, when facts arise in a case that give the appearance of improper police conduct, but additional evidence exists that, if admitted at trial, would help demonstrate the propriety of the police conduct, such evidence may be relevant for that non-propensity purpose.

In the present case, the district court admitted the probation evidence, not for a propensity purpose, but to provide context for the search. We agree that the probation evidence was relevant for the non-propensity purpose of explaining the police officers' actions. Like in *Yakovac*, where evidence of an outstanding arrest warrant was relevant to explaining why police officers searched the defendant's vehicle, here, evidence that Jones was on probation is relevant to explaining why the police officers searched his underwear. In the video recording of the officers searching Jones, the officers can first be heard telling Jones that they received permission from his probation officer to search him pursuant to his Fourth Amendment waiver. The officers further explain that waiver of his Fourth Amendment rights was a condition of his probation. The discussion of Jones's probation provides context for the next portion of the video, where one officer holds onto Jones, who was handcuffed, while another reaches into the front of his pants and rummages around for a few seconds before pulling the bag of heroin out of his underwear. Without this context, the jury would be left wondering why the police suddenly conducted such an invasive search of Jones's person. Therefore, the probation evidence was relevant to explaining the officers' knowledge of Jones's legal status as a probationer and their subsequent search of his underwear based on that knowledge.

As to the second step, the district court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *See State v. Pepcorn*, 152 Idaho 678, 688–89, 273 P.3d 1271, 1281–82 (2012). Under Idaho Rule of Evidence 403, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." *State v. Ruiz*, 150 Idaho 469, 471, 248 P.3d 720, 722 (2010).

> The rule creates a balancing test. On one hand, the trial judge must measure the probative worth of the proffered evidence. The trial judge, in determining probative worth, focuses upon the degree of relevance and materiality of the evidence and the need for it on the issue on which it is to be introduced. At the other end of the equation, the trial judge must consider whether the evidence amounts to unfair prejudice. Here, the concern is whether the evidence will be given undue weight, or where its use results in an inequity, or as several commentators have suggested, "illegitimate persuasion." Only after using this balancing test, may a trial judge use his discretion to properly admit or exclude the proffered evidence.

*State v. Rhoades*, 119 Idaho 594, 603–04, 809 P.2d 455, 464–65 (1991) (quoting *Davidson v. Beco Corp.*, 114 Idaho 107, 110, 753 P.2d 1253, 1256 (1987)). To an extent, "[a]ny evidence is prejudicial to the party whose theory of the case it contradicts." *Id.* at 604, 809 P.2d at 465 (citing *State v. Fenley*, 103 Idaho 199, 203, 646 P.2d 441, 445 (Ct. App. 1982)). However, the focus is on unfair prejudice. *Id.* "[E]vidence should be excluded if it invites inordinate appeal to lines of reasoning outside of the evidence or emotions which are irrelevant to the decision making process." *Id.*

In this case, the jury heard several references to Jones's probationary status over the course of the two-day trial. On the first day of trial, one officer said the word "probation" twice during his testimony while explaining that he had learned that Jones was on probation and contacted Jones's probation officer. After direct examination of the officer was finished, the district court gave the following limiting instruction:

> Members of the jury, you heard [the officer] testify and he mentioned that -- or you learned that Mr. Jones was on probation, you also heard the prosecutor refer to that during her opening statement. That's being admitted for, among other things, so you can understand the circumstances surrounding the stop.
>
> That's the only basis for its admission. You're not to use it as probative of whether or not Mr. Jones has committed any crimes

8

here in the trial before you, it's only for understanding the circumstances of the stop, and I'm directing you to only use it for that purpose, concerning the circumstances of the stop not for any weight to whether he's guilty or not of these crimes.

On the second day of trial, the State published a video of the officers' search of Jones. Before searching Jones, the following conversation occurs between one of the officers and Jones:

OFFICER: Hey, we talked to your P.O.

JONES: Oh yeah?

OFFICER: Yeah. He says search you. So, let us know now –

JONES: Search me?

OFFICER: Yeah. Search you.

JONES: Alright.

OFFICER: You have a Fourth waiver. You know that right?

JONES: What's a F– I don't understand what –

OFFICER: Fourth Amendment waiver means you've waived your right to search and seizure which means we can search you at his direction any time. Do you understand that?

JONES: I –

OFFICER: This is a condition of your supervision. Do you understand that?

JONES: Yes sir.

OFFICER: You signed off on all this stuff. You were explained all this stuff.

JONES: Alright.

After the video was published for the jury, the district court gave another limiting instruction:

So jurors, that video included references to a PO. It also included references to conditions of probation. As I mentioned yesterday, Mr. Jones, at the time of this video, was on probation. And that's being told to you so that you understand the circumstances of the stop. But you're to give no weight to that in determining whether he committed any crimes here as part of this trial.

The State also published an audio recording of a conversation between Jones and a detective that took place at the police station after he was arrested. Jones's probationary status came up once during the interrogation. In response to a question about why Jones used heroin, Jones answered that he could not smoke marijuana because he was on probation. This was the only mention of Jones's probation made in the audio recording.

Shortly after the audio recording was published for the jury, the court took a recess for lunch. When the jury returned from recess, the district court began by giving another limiting instruction that the mention of probation was to be given no weight by the jury in determining whether Jones committed the crime for which he was on trial.

In making the initial decision to allow the probation evidence, the district court engaged in the following analysis:

> I believe it is admissible under 401 -- actually, it's relevant under 401, that does have a tendency to make any fact more likely or not. The question is under 403 and whether or not I believe it's prejudice to [Jones]. The question is unfair prejudice and the question is does the unfair prejudice substantially outweigh the probative value.
>
> The underlying issue is it's a probation. The allegation here -- there is no way for a jury to know how long ago it is, what the crime is. A lot of people in America can be on probation and it can be for a completely unrelated fact, and I think [the State's] argument is well-taken you have to have a two-part search, some invasiveness and that is a fact to be considered in the magnitude of what the unfairness to [Jones's] case.
>
> So I'll allow it. I will take the motion to say that's as far as it goes to what the video will show about it, it won't go into what the actual probation is for, whether it's felony, misdemeanor, anything else, unless, [Jones], you want to put that in play.

After a break, the district court offered the following additional analysis in support of its decision to allow the probation evidence:

> We analyzed [the probation evidence] under 401 and 403, and under 404, as [an] additional part of the analysis, 404(b), evidence of other crimes. It's arguable that mentioning probation is evidence of the crimes, there has to have been another crime previously done. It's not admissible to prove the character of a person, to show the person acted in conformity therewith. That's not what is being done here, it's not being admitted for that purpose. I think the State's argument is correct it's just to show the context of the search, and therefore under 404(b)(2), it's also under my discretion and I'll allow it. That's my additional thoughts.

We acknowledge that the district court's application of the Rule 403 balancing test in this case was minimal. However, we cannot say that the district court abused its discretion. The district court recognized that the decision to admit the probation evidence under Rule 404(b) was a matter of discretion when it stated "under 404(b)(2), it's also under my discretion and I'll allow

10

it." The district court acted within the outer boundaries of its discretion, and consistent with the applicable legal standards, when it recognized that the evidence was Rule 404(b) evidence and engaged in both a Rule 401 and Rule 403 analysis to determine the evidence's admissibility. The district court also reached its decision by the exercise of reason. The district court mentions the invasiveness of the search which goes to the probative value of the probation evidence because the evidence is used to provide context to the invasive search. The district court weighed the probative value of the probation evidence against its potential prejudice to Jones, reasoning there was no way for the jury to know how long ago the underlying crime was committed. The district court also reasoned the prejudicial effect of the probation evidence could be limited by not presenting evidence to the jury about what crime Jones was on probation for, or even whether the underlying crime was a felony or misdemeanor.

The district court's statement "a lot of people in America can be on probation" seemingly suggests that the jury hearing about Jones's probation would not have much prejudicial effect because being on probation is so common that it will not impact the jury's perception of him. This portion of the district court's reasoning is dubious, and was not supported by adequate foundation in this case. However, one vague, questionable statement does not invalidate the remainder of the district court's analysis. In reaching its ultimate decision that the probation evidence was admissible, the district court engaged in the balancing test under Rule 403 and found that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Out of precaution, the district court also provided several limiting instructions to the jury, further reducing any prejudicial effect of the probation evidence on Jones. We find the district court's analysis was sufficient to conclude that it was reached by the exercise of reason. Thus, the district court did not abuse its discretion in determining that the probative value of the probation evidence was not substantially outweighed by the danger of unfair prejudice.

Despite the district court's application of Rules 404(b), 403, and 401, Jones contends that "context of the search" is just another way of saying *res gestae*, a theory of admissibility recently rejected by this Court in *State v. Kralovec*, 161 Idaho 569, 388 P.3d 583 (2017). "*Res Gestae* evidence is 'other acts that occur during the commission of or in close temporal proximity to the charged offense which must be described to complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings.'" *Id.* at 573, 388 P.3d at 587.

11

In *Kralovec*, a man was arrested for public intoxication and resisting and obstructing arrest. *Id.* at 571, 388 P.3d at 585. He resisted and threatened officers as they transported him to jail and later injured an officer who was removing the man's restraints after intake. *Id.* At trial, the State sought to introduce audio evidence of the man's arrest and transport to jail to show knowledge and intent pursuant to Idaho Rule of Evidence 404(b). *Id.* The district court determined the evidence was admissible under both the theory of *res gestae* and pursuant to Rule 404(b). *Id.* On appeal, this Court explained that the *res gestae* doctrine was a common law theory of admissibility used by courts before the promulgation of the Idaho Rules of Evidence. *Id.* at 573–74, 388 P.3d at 587–88. Since the Idaho Rules of Evidence have replaced the common law rules of admissibility, "evidence previously considered admissible as *res gestae* is [now] only admissible if it meets the criteria established by the Idaho Rules of Evidence." *Id.* at 574, 388 P.3d at 588. Having considered the shift away from the common law to the Idaho Rules of Evidence, this Court "decline[d] to perpetuate the use of the *res gestae* doctrine in Idaho," upholding the district court's decision based solely on its analysis of Rule 404(b). *Id.* at 573–75, 388 P.3d at 587–89.

The holding in *Kralovec* does not make all evidence that would fall within the definition of *res gestae* at common law inadmissible. Rather, *Kralovec* explains that the Idaho Rules of Evidence govern the admissibility of evidence, rather than common law principles. Evidence that would have been considered *res gestae* at common law is admissible only if it meets the requirements of the Idaho Rules of Evidence. Therefore, whether the evidence of Jones's probation would have been considered *res gestae* evidence at common law is immaterial to its admissibility. Rule 404(b) and the other Rules of Evidence control our analysis. Because the probation evidence was relevant for a non-propensity purpose, and because the district court did not abuse its discretion in ruling that the probation evidence's probative value was not substantially outweighed by the danger of unfair prejudice, we hold the district court did not err in admitting the probation evidence at trial.

Finally, Jones argues the district court abused its discretion in admitting evidence under Rule 404(b) without finding that the State gave notice of its intent to use the evidence or excusing lack of pretrial notice for good cause shown. In this case, the State did not file notice before or during trial that it intended to solicit the testimony that Jones was on probation or to play the video in which Jones's probation was mentioned.

12

Idaho Rule of Evidence 404(b) requires that the prosecutor give notice of its intent to admit evidence of prior crimes, wrongs, or other acts. I.R.E. 404(b)(2). Such notice must be given "reasonably in advance of trial" or "during trial if the court, for good cause shown, excuses lack of pretrial notice." *Id.*

Though a prosecutor's failure to provide Rule 404(b) notice ordinarily bars prior bad acts evidence from admission, we will not rule on the Rule 404(b) notice issue because it was not preserved for appeal. *See State v. Sheldon*, 145 Idaho 225, 230, 178 P.3d 28, 33 (2008) (citing *State v. Cannady*, 137 Idaho 67, 72, 44 P.3d 1122, 1127 (2002)) ("In *State v. Cannady* . . . we stated a prosecutor's failure to provide 404(b) notice was 'inexcusable' but declined to rule on the issue because it was not preserved for appeal.").

To preserve an issue for appeal, a party must make a timely objection on the record below. "An objection to the admission of evidence must state the specific grounds for the objection, if it is not apparent from the context." *Cannady*, 137 Idaho at 72, 44 P.3d at 1127 (citing *State v. Martin*, 118 Idaho 334, 796 P.2d 1007 (1990)); I.R.E. 103(a)(1).

Jones objected to the use of the probation evidence under Rule 401 because it was not relevant and under Rule 403 on the grounds that its probative value was substantially outweighed by the danger of prejudice to his case. When asked to expand upon his objection, Jones explained:

> It's simply more prejudicial . . . than it is probative of any issue in this case. Really the issue here is did [Jones] possess or not possess heroin and was it or was it not more than 28 grams of that product. The fact he's on probation just leads to the inference, I think, even with a jury who may not and likely are not familiar with the law . . . to say, hey, he's on probation, he probably did do something bad. State doesn't need it, we don't need to sully up the record on that.

However, in making his objection, Jones did not specifically mention the notice requirement of Rule 404(b). Nor is it apparent from the context that his objection was based on the notice requirement. Jones did not refer generally to being surprised by the probation evidence. He made no statement that in any way suggested that he had not received notice of the State's intent to use the probation evidence. When the district court later brought up Rule 404(b) on its own, Jones did not attempt to renew his objection or argue that the State had failed to provide notice of its intent to use Rule 404(b) evidence. Therefore, Jones failed to preserve his 404(b) notice argument for appeal.

13

Unobjected to error may still be subject to review on appeal if it constitutes fundamental error. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010). However, in a criminal case, error in the admission of a defendant's prior crimes under Rule 404(b) is not fundamental error. *Cannady*, 137 Idaho at 72–73, 44 P.3d at 1127–28. Therefore, even if the district court erred in admitting the probation evidence without requiring the State to provide notice under Rule 404(b), we decline to address the issue because Jones failed to preserve it by objecting below and the evidence's admission did not constitute fundamental error.

**B. The district court erred in admitting the knife Jones was carrying at the time of his arrest into evidence, but the error was harmless.**

Jones argues the district court erred in admitting the knife into evidence because it was not relevant to the charges of heroin trafficking or possession of drug paraphernalia.

### 1. The knife was not relevant.

As explained above, evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." I.R.E. 401. "Whether a fact is material is determined by its relationship to the legal theories presented by the parties." *State v. Sanchez*, 165 Idaho 563, 572, 448 P.3d 991, 1000 (2019) (quoting *State v. Koch*, 157 Idaho 89, 100–01, 334 P.3d 280, 291–92 (2014)).

Jones was convicted of trafficking in heroin under Idaho Code section 37-2732B(a)(6)(C). Under that statute, a person is guilty of trafficking in heroin if he is "knowingly in actual or constructive possession of . . . any . . . substance containing a detectable amount of [heroin]" and the quantity involved is 28 grams or more. I.C. § 37-2732B(a)(6)(C). Intent to distribute or deliver the heroin is not an element of the offense. *See State v. Rogerson*, 132 Idaho 53, 56, 966 P.2d 53, 56 (1998).

Jones was also convicted of possession of drug paraphernalia under Idaho Code section 37-2734A. Under the possession of drug paraphernalia statute, "[i]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance." I.C. § 37-2734A.

In the present case, the district court determined the knife was relevant because "knives are commonly used in drug transactions." However, the district court cited no existing case law to support this conclusion. Nor did the district court refer to any testimony or other evidence in

the record to support its conclusion. In fact, there is no case law in Idaho suggesting that knives are commonly used in drug transactions and there was no evidence presented at trial upon which the district court could have based its conclusion. It was error to determine the knife was relevant for that reason.

The State argues that the knife was relevant to show Jones's lack of credibility because he stated that he was not carrying any weapons when asked by an officer and the knife was found in his pocket when the officer patted him down moments later. In support of its argument, the State cites *State v. Ehrlick* for the proposition that "[e]vidence relating to the credibility of a witness is always relevant." 158 Idaho 900, 926, 354 P.3d 462, 488 (2015) (citing *Mulford v. Union Pac. R.R.*, 156 Idaho 134, 141, 321 P.3d 684, 691 (2014)). While the State cites a valid principle of law, its argument lacks merit because Jones did not testify. Since he was not a witness, his credibility was not at issue.

### 2. The district court's error admitting the knife into evidence was harmless.

"In the case of an incorrect ruling regarding evidence, this Court will grant relief on appeal only if the error affects a substantial right of one of the parties." *State v. Ehrlick*, 158 Idaho 900, 911, 354 P.3d 462, 473 (2015) (quoting *State v. Shackelford*, 150 Idaho 355, 363, 247 P.3d 582, 590 (2010)); *see also* I.C.R. 52 ("Any error, defect, irregularity or variance that does not affect substantial rights must be disregarded."). An abuse of discretion may be found harmless if a substantial right is not affected. *Ehrlick*, 158 Idaho at 911, 354 Idaho at 473 (citing *Shackelford*, 150 Idaho at 363, 247 P.3d at 590). "To establish harmless error, the State must prove 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* (quoting *State v. Perry*, 150 Idaho 209, 221, 245 P.3d 961, 973 (2010)).

In this case, the State had video evidence of a police officer pulling a plastic bag containing a brown substance out of Jones's underwear. The officers who searched Jones testified about finding the plastic bag and suspecting that it contained heroin. There was also testimony that the State drug lab positively identified the substance inside the bundle as 30.96 grams of heroin. While Jones did not testify, the audio recording of his interrogation was introduced at trial, where he admitted to a detective that he used heroin. When asked in the interview what he was doing with an ounce of heroin, Jones replied, "smoking it." Based on the strength of the State's other evidence and the minimal probative value of the knife, we find

15

beyond a reasonable doubt that the jury would have reached the same result absent the district court's error. Therefore, the error was harmless.

## C. The district court did not abuse its discretion in imposing a 30-year sentence with a 15-year fixed term.

Jones argues that "given any view of the facts, his unified sentence of thirty years, with fifteen years fixed, is excessive." He also argues the district court "failed to consider the fact that [he] was aware of his heroin addiction and that, with programming, [he] could likely be successful in the community." Jones also points to a number of letters written to the court by his family and friends illustrating his good character and the availability of support for him within the community. Finally, he claims that if the district court had "properly considered his addiction, substantial support within the community, good work history, and remorse, it should have imposed a less severe sentence."

"When reviewing whether a sentence is excessive, we review all the facts and circumstances in the case and focus on whether the trial court abused its discretion in fixing the sentence." *State v. Baker*, 136 Idaho 576, 577, 38 P.3d 614, 616 (citing *State v. Zaitseva*, 135 Idaho 11, 13 P.3d 338 (2000)). Where a district court imposes a sentence within the statutory limits, "the appellant bears the burden of demonstrating that it is a clear abuse of discretion." *State v. Matthews*, 164 Idaho 605, 608, 434 P.3d 209, 212 (2019) (quoting *State v. Miller*, 151 Idaho 828, 834, 264 P.3d 935, 941 (2011)). "In deference to the trial judge, this Court will not substitute its view of a reasonable sentence where reasonable minds might differ." *Id.* (quoting *State v. Stevens*, 146 Idaho 139, 148–49, 191 P.3d 217, 226–27 (2008)).

When appealing a sentence reviewed under the abuse of discretion standard, "the appellant 'must establish that under any reasonable view of the facts, the sentence was excessive considering the objectives of criminal punishment.'" *Id.* (quoting *Baker*, 136 Idaho at 577, 38 P.3d at 615). "Those objectives are (1) protection of society; (2) deterrence of the individual and the public generally; (3) the possibility of rehabilitation; and (4) punishment or retribution for wrong-doing." *Id.* (quoting *State v. Varie*, 135 Idaho 848, 856, 26 P.3d 31, 39 (2001)) (quotation marks omitted).

In this case, the district court did not abuse its discretion in sentencing Jones. The district court properly considered four factors in determining Jones's sentence: "protection of society, deterrence of crime, . . . rehabilitation, and punishment." Idaho Code section 37-2732B(a)(6)(C) provides a mandatory minimum sentence of a 15-year fixed term for trafficking in heroin

convictions in which the quantity of heroin exceeds 28 grams. The maximum sentence is imprisonment for life. I.C. § 37-2732B(a)(7). Jones's sentence of 30 years with 15 years fixed was well within the boundary set by the statute. The district court considered the amount of heroin, the facts specific to the crime as it was committed, and Jones's prior criminal background in sentencing Jones.

Jones's arrest in this case was not his first run-in with law enforcement. Jones had a felony conviction for carrying a concealed weapon in Ohio in 2006. He had two probation violations associated with that case. In 2013, he was convicted of resisting or obstructing officers in Idaho. In 2014, Jones was convicted of possession of marijuana in Idaho. Jones received his second felony conviction in 2015 for possession of more than three ounces of marijuana. He was on probation for the 2015 felony when the incident leading to his present conviction occurred. In light of the entire record before this Court, the sentence imposed by the district court was well within its discretion. Therefore, we hold that the district court did not abuse its discretion in sentencing Jones.

## V.    CONCLUSION

In consideration of the foregoing, we hold: (1) the district court did not err by admitting evidence that Jones was on probation; (2) the district court erred in admitting the knife into evidence, but the error was harmless; and (3) the district court did not abuse its discretion in sentencing Jones to 30 years' imprisonment with the 15-year mandatory minimum fixed. Accordingly, the district court's judgment of conviction is affirmed.

Justice BEVAN **CONCURS.**

STEGNER, J., concurring in the result.

I concur with the result the majority has reached, but I disagree with its reasoning. While I agree with the majority that Jones' status as a probationer qualifies as evidence of some other crime for purposes of Idaho Rule of Evidence 404(b), I diverge from the majority's conclusion that this evidence is relevant for another non-propensity purpose. Nevertheless, I conclude the erroneously admitted evidence constituted harmless error, so I ultimately concur that the judgment of conviction should be affirmed.

The majority holds that the fact that Jones was on probation was relevant to provide context for the search, reasoning that this fact is relevant both to why the officers were able to perform a search, and why the search was so invasive. However, these issues are not relevant

17

because they are not facts of consequence in determining this action. Nothing about the fact of probation is probative or material to the State's burden of establishing the elements of the crimes with which Jones was charged. Accordingly, I cannot agree that the fact of Jones' probationary status is relevant. *See* I.R.E. 401.

In my view, the justification provided for admitting evidence that Jones was a probationer is simply the *res gestae* doctrine under a new coat of paint. As this Court defined it in *State v. Kralovec*, 161 Idaho 569, 573, 388 P.3d 583, 587 (2017), *res gestae* evidence constitutes "other acts that occur during the commission of or in close temporal proximity to the charged offense which must be described to 'complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings.'" *Kralovec*, 161 Idaho at 573, 388 P.3d at 587 (citation omitted). This Court rejected the *res gestae* doctrine in *Kralovec*, concluding "that evidence previously considered admissible as *res gestae* is only admissible if it meets the criteria established by the Idaho Rules of Evidence." *Id.* at 574, 388 P.3d at 588. I fail to understand how Jones' probationary status can be found "relevant for the non-propensity purpose of explaining the police officers' actions" *without* resorting to the *res gestae* doctrine.

It is also because of *Kralovec* that I disagree with the majority's application of *State v. Yakovac*, 145 Idaho 437, 446, 180 P.3d 476, 485 (2008), as an example of I.R.E. 404(b) evidence being admitted to provide context for other evidence. *Yakovac* predates *Kralovec*. In *Yakovac*, evidence of Yakovac's outstanding arrest warrant was determined to be relevant "to explain the police officers' actions." 145 Idaho at 446, 180 P.3d at 485. After this Court made it clear in *Kralovec* that *res gestae* evidence needed to satisfy the Idaho Rules of Evidence, contextual justifications like those offered in *Yakovac*—and relied on by the majority, here—are inadmissible under the Idaho Rules of Evidence.

Further, the legality of a search is *not* the concern of the jury. The legality of a search is a question of law for the *judge* to determine because unlawfully seized evidence must be excluded from trial. *See State v. Cohagan*, 162 Idaho 717, 720, 404 P.3d 659, 662 (2017). No matter the other questions a jury must decide, *why* a search is proper is not of consequence to an action once it is deemed lawful. Here, the State needed only to prove the elements of trafficking in heroin and possession of drug paraphernalia. Why then was the jury somehow entitled to hear inherently prejudicial information about Jones in order to make the search appear more proper? To ameliorate "the appearance of improper police conduct," as the majority puts it. However, if

18

that were a legitimate concern the jury could have easily been instructed with respect to the bodycam footage that the search and its scope were proper, without the need to disclose Jones' probationary status.

I would find admission of this evidence harmless error because the error of admitting this 404(b) evidence was unimportant in relation to all of the other evidence properly admitted against Jones. *See Yates v. Evatt*, 500 U.S. 391, 404 (1991). For this reason, I concur with the result the majority reached.

Justices BRODY and MOELLER **CONCUR.**