**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49901**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: April 19, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JOSHUA ELLIOT HOWELL, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Mark T. Monson, District Judge.

Judgment of conviction and unified sentence of fifty years, with a minimum period of confinement of ten years, for felony domestic battery and being a persistent violator, <u>affirmed</u>; judgment of conviction for false imprisonment, <u>affirmed</u>.

Erik R. Lehtinen, Interim State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

LORELLO, Judge

Joshua Elliot Howell appeals from his judgment of conviction and unified sentence of fifty years, with a minimum period of confinement of ten years, for felony domestic battery and being a persistent violator of the law and from his judgment of conviction for misdemeanor false imprisonment. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Howell and the victim were in a dating relationship. In 2020, the State charged Howell with second degree kidnapping, felony domestic battery, felony stalking, and attempted strangulation. The State also alleged Howell is a persistent violator of the law. The charges related

1

to an incident involving Howell and the victim. At the time of the incident, the victim was twenty-five-weeks pregnant with the parties' child. Howell pled not guilty and the case was set for jury trial.

Prior to trial, the State filed a notice of intent to present evidence pursuant to I.R.E. 404(b), seeking the admission of evidence relating to past incidents of bad acts committed by Howell. These incidents were alleged to have occurred over a two-month span in 2019 and involved various acts of domestic violence and violations of a no-contact order. In connection with these incidents, Howell pled guilty to domestic battery, injury to a child, violating a no-contact order, and domestic battery in the presence of a child. In response, Howell filed a motion in limine requesting this evidence be excluded from trial. After hearing oral argument on the parties' motions, the district court determined the proffered Rule 404(b) evidence was inadmissible because it was both irrelevant and unfairly prejudicial. The district court concluded it "would reconsider admission of this evidence should it become relevant due to evidence presented by Howell at trial."

The victim testified at trial and recounted what occurred on the days leading up to and on the night of the charged offenses. Following the incident, and once Howell left the victim's presence, the victim made an appointment with her doctor and drove to the medical center. Once there, the victim spoke with a nurse and told her what happened and who caused her injuries. As the victim spoke with the nurse, Howell called the victim's cell phone, but she did not answer. After leaving the medical center, the victim went to the police department where she spoke with an officer about what happened and who caused the victim's injuries. After interviewing the victim, the officer took photographs of the victim's injuries.

On cross-examination, counsel for Howell asked the victim, "Has Mr. Howell ever seen his [child]?" The State objected on relevance grounds, to which counsel replied that his question "goes to the motivation behind all these claims and actions." The district court subsequently excused the jury and the attorneys argued the matter further. Responding to the State's relevance objection, Howell asserted that a motivational issue exists "in every case" and that "a witness' motivation for their stories is absolutely important." Because he was facing criminal charges, Howell argued that "he deserves to be able to tell part of his story and what he believes the motivations [of the victim] are." Howell further argued the proffered question would not open the door to any Rule 404(b) evidence previously held inadmissible by the district court. The State

2

responded that, because the incident occurred months before the child was born, the question attempting to highlight the victim's motive in relation to the child was not relevant. The State further argued the question would "open the door wide open for [Rule] 404(b)" evidence. Howell responded that, if the district court were to determine his proffered question would open the door to additional Rule 404(b) evidence, he would retract the question, despite his disagreement. Ultimately, the district court agreed with the State and sustained the objection "on the basis of relevance." According to the district court, while it elected to "take the easy route" by sustaining the objection on the basis of relevance, it also agreed with the State that Howell's purported question would "kick the door open" to the Rule 404(b) evidence previously held inadmissible.

The jury found Howell guilty of felony domestic battery, I.C. §§ 18-918(2)(a)(b) and 18-903(a), and misdemeanor false imprisonment, I.C. § 18-2901.[1] Thereafter, Howell admitted to being a persistent violator of the law, I.C. § 19-2514.[2] The district court imposed a unified sentence of fifty years, with a minimum period of confinement of ten years.[3] Howell appeals.

## II.

## STANDARD OF REVIEW

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992). We review questions of relevance de novo. *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

---

[1] While the jury found Howell not guilty of second degree kidnapping, it found him guilty of the included offense of misdemeanor false imprisonment. The jury also found Howell not guilty of felony stalking and not guilty of attempted strangulation.

[2] According to the amended information, Howell was previously convicted of felony coercion and felony burglary in the first degree. Both felony convictions occurred in Oregon.

[3] In a separate judgment, the district court sentenced Howell to credit for time served for false imprisonment. On appeal, Howell does not challenge this sentence.

3

# III.

# ANALYSIS

On appeal, Howell argues the district court erred when it precluded him from questioning the victim about whether Howell had seen their child. Howell contends the question sought to elicit relevant evidence regarding the victim's alleged motive underlying her accusations. Howell further contends the district court erred when it determined that the question would have opened the door to inadmissible Rule 404(b) evidence. According to Howell, neither the question nor the presumed answer to the question would have opened the door to evidence regarding other reasons he had not seen his child, including that he was in jail and there was a no-contact order in place between him and the victim. The State responds that Howell's question was properly excluded because it sought irrelevant evidence. Additionally, the State asserts Howell has failed to show the district court erred in determining the question and expected answer would have opened the door to Rule 404(b) evidence. Finally, the State contends that, even if the district court erred in precluding Howell from asking the victim if Howell had ever seen his child, any error was harmless.[4] We hold that Howell has failed to show the district court abused its discretion in determining that his proposed question to the victim would open the door to the otherwise inadmissible Rule 404(b) evidence.[5] Even if the district court's decision was erroneous, any error was harmless. We also hold that Howell has failed to show the district court abused its sentencing discretion.

## A.    "Opening The Door" to Rule 404(b) Evidence

Where a trial court initially rules against the admission of Rule 404(b) evidence, the defendant may nevertheless open the door by putting the relevant acts covered by Rule 404(b) at

---

[4]    The State also argues Howell failed to preserve his evidentiary challenge because he waived any argument when he agreed to retract his question if the district court concluded it would open the door to 404(b) evidence. Because the district court concluded as such, the State contends Howell cannot now complain about his purported question being excluded. We disagree. The fact Howell complied with the district court's ruling and retracted his question did not waive his argument on appeal. Thus, Howell's argument on appeal is preserved.

[5]    In light of our disposition of the Rule 404(b) determination, we need not address Howell's argument that his proffered question for the victim would elicit relevant evidence regarding the victim's alleged bias and motive.

4

issue. *See State v. Cardell*, 132 Idaho 217, 219-20, 970 P.2d 10, 12-13 (1998); *State v. Gardiner*, 127 Idaho 156, 161-62, 898 P.2d 615, 620-21 (Ct. App. 1995); *see also* 29 AM. JUR. 2d *Evidence* § 352 (2024) (stating that, "under the 'open-door' doctrine, also known as the doctrine of invited error or curative admissibility, a party's use of evidence to create an incomplete or misleading picture opens the door so that the opposing side may, in the court's discretion, use otherwise-inadmissible evidence to complete the picture with appropriate detail").

Howell argues the district court abused its discretion when it determined that asking the victim whether Howell had been allowed to see his child would have opened the door to Rule 404(b) evidence. Howell's question was intended to elicit a response from the victim that Howell had not been allowed to see his child, which Howell believes would reveal the victim's alleged bias or motive to lie about her allegations against him. Howell argues this exchange "would not have put the other acts evidence at issue or create false impressions" because the question "did not amount to a denial that there were any previous incidents" or call upon the victim "to deny any such incidents." Howell cites *State v. Thompson*, 132 Idaho 628, 977 P.2d 890 (1999), in support of his argument.

In *Thompson*, the trial court refused to strike information in a psychological report prepared for the purpose of determining whether the defendant was competent to stand trial. The language at issue read:

> Thompson also has a history of sexual abuse. He indicated that his daughter reported that he sexually abused her. Mr. Thompson completed the Rider Program in Cottonwood, probation and treatment as a sex offender through the SANE program. According to Mr. Thompson, he did not sexually abuse his daughter. He said that she turned him in because he was pursuing a sexual interest with her friends.

*Id*. at 633-34, 977 P.2d at 895-96. The trial court denied Thompson's motion to strike and the request to withdraw the report. The trial court denied the motion to strike because the parties had previously stipulated to admission of the report and Thompson had already testified that he: (1) had been previously convicted; (2) had mental problems; (3) had been treated at the state hospital in Blackfoot; and (4) was currently being treated at the Veteran Affairs Hospital. *Id*. at 635, 977 P.2d at 897. On appeal, the Idaho Supreme Court held that Thompson's testimony "did not open the door for the admission of [the psychological report]." *Id*. According to the Court, Thompson's testimony he was presently in jail, had been previously convicted of a felony and had

received treatment for his mental health problems "did not suggest that his prior conviction was for lewd and lascivious conduct with his [fifteen-year-old] daughter or that he had 'completed the Rider Program at Cottonwood, probation and treatment as a sex offender through the SANE program.'" *Id*. The Court concluded that neither Thompson's testimony nor the testimony of other witnesses suggested that he had a history of sexual abuse. *Id.* In other words, nothing in Thompson's testimony opened the door for the sexual abuse comments contained in the psychological report.

This case is distinguishable from *Thompson*. While Thompson's testimony did not mislead the jury or create any false impressions, the same cannot be said in Howell's case. Howell asserted that a motivational issue exists "in every case" and that "a witness' motivation for their stories is absolutely important," and suggested the victim falsely accused him of battering the victim prior to their child's birth in order to keep Howell from seeing the child. Allowing the question and the presumptive answer that Howell had not seen his child without allowing the victim to explain the reasons would have misled the jury about why the victim did not want Howell to see the child. Preventing the victim from explaining a "no" answer and allowing Howell to argue, as he wished to do, that the victim accused Howell of battering her in order to prevent Howell from having custodial or visitation rights would have created a false impression. This is so even if Howell believed the victim's motive was to interfere with his custodial rights because his beliefs do not control whether evidence is admissible. While Howell could try to control his cross-examination of the victim to prevent her from explaining a "no" response to Howell's question, the State could elicit the victim's explanation on redirect. The victim's explanation would have properly included the prior bad acts excluded by the district court prior to trial. That Howell's question, when considered in a vacuum and without context, did not ask about "previous alleged incidents" does not mean the question and expected answer did not implicate precisely that. The district court did not abuse its discretion in reaching this conclusion.

## B.     Harmless Error

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the error did not contribute to

the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *Yates v. Evatt*, 500 U.S. 391, 403 (1991); *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Applying the foregoing standards, even assuming the district court erred in precluding Howell from asking his question about visitation, the error was harmless. The probative force of the alleged error was minimal because the question had little to no probative value in relation to the charged offense. In other words, the question and the victim's expected answer to the question about whether Howell had seen their child had no bearing on whether Howell battered the victim on the night of the incident.

The minimal probative force of the alleged error is outweighed by the probative force of the record establishing guilt beyond a reasonable doubt without the alleged error. The other evidence presented includes the victim's testimony about what occurred on the night of the incident, as well as the days leading up to it. According to the victim, she was in the process of moving out of her apartment and ending her relationship with Howell. The victim testified that she was moving because she was afraid of Howell and "was not safe" in her apartment. As she was packing her belongings, Howell came to her apartment unannounced. During this visit, the victim testified she was "trying to play nice" but did not know Howell's intentions nor "how he was going to act." When the victim informed Howell of her plan to end their relationship, Howell became upset. Days later, Howell again arrived at the victim's apartment unannounced and followed her into the apartment without invitation. According to the victim, seeing Howell unexpectedly arrive at her apartment made her feel "anxious, nervous, [and] scared again because the night before[, she] had told him that [they] weren't together" anymore.

7

On the night of the incident, the victim was at her parents' house when she received a call from Howell who indicated he wanted to "come over."  The victim told Howell she was not at her apartment and that she needed to continue packing.  Howell replied by telling the victim he had a key to the apartment, which the victim did not think was true.  However, when she arrived at her apartment, Howell "walked out from the living room and said, 'See, I told you I have a key.'"  After the victim reminded Howell that their relationship had ended, Howell replied, "no, we are together until I say we are not together."  Howell and the victim proceeded to argue about their relationship ending until the victim told Howell he could not stay at her apartment.  Howell responded, "let's just go into the bedroom and watch a movie," which the parties did.  The victim testified as to what happened next:

> We were laying there for maybe about an hour, hour and a half; and then all of a sudden he sat up, and he said, "Who did you--who the [f***k] did you [f***k] last night?"  And I said, "Nobody, I was at my parents' house."  And he said, "No, I know you [f***ked] somebody.  Who did you [f***k]?"
>
> And then he sat on top of my stomach and started hitting me in the head.  So I put my arms over my face to cover my face, and then he put his hand over my mouth, and I was screaming and crying.  And he said, "Calm down and I will get off of you."  And so then I calmed down, and he got off of me.
>
> And then he went to the door, and I went to the door to leave; and he said, "Where are you going?"  And I said, "I'm leaving.  I want to go home.  Just let me go home."  And he said, "You are not going anywhere."
>
> And he had his arm up against the wall, and so I pushed him, and he pushed me back and I fell back on the bed and then fell in between the bed and the wall.  And so I was kind of stuck there.  And he sat on top of me again and put his hand over my nose and my mouth, and I couldn't breathe.  But I was trying to scream, and he kept telling me to calm down and he will get off of me.
>
> And I just kept trying to--just trying to get off of under him; and he kept saying, just calm down.  And then that's when I remembered that my parents had given me a taser, a stun gun just in case, but it was in the kitchen.  So I calmed down, and he got up off of me.  And so he put his arm back up on the door, and I said I'm just going to the kitchen to get a popsicle.

The victim attempted to turn the stun gun on, but Howell took it out of her hands.  The victim then ran for the back door in an attempt to flee but did not realize Howell had locked the door.  Howell then came up from behind her and pulled her down, causing her to fall on her back.  Howell proceeded to sit on top of the victim and put his hands over the victim's nose and mouth.  Howell then let the victim get up before pushing her in the bedroom.  When the victim told Howell that she could not feel the child kick, Howell replied, "Well if you don't feel her kick, then you

8

didn't deserve her." Howell and the victim then laid in bed and Howell ultimately fell asleep. As Howell slept, the victim attempted to reach her phone, which was on Howell's side of the bed. As she reached for her phone, Howell grabbed her wrist and said, "What the [f**k] are you doing?" While the victim told Howell she was "just checking the time," she was actually reaching for her "phone to call somebody" but was unable to do so. The victim testified that she was then able to fall asleep.

When the victim awoke and realized Howell was no longer in bed with her, she grabbed her phone and called her father. The victim testified that she was able to hang up the call as Howell entered the bedroom. When Howell asked the victim about the call, the victim told Howell that her father called and said he was on his way to her apartment. Thereafter, Howell got dressed, gave the victim her car keys, and she drove Howell home. As Howell was being dropped off, he asked the victim whether she was going to pick him up after her father left her apartment. The victim told Howell she would and testified she told Howell "anything to get him out of the car." Once Howell exited the vehicle, the victim called her doctor and made an appointment for that afternoon.

The jury also heard testimony from the nurse who met with the victim following the incident, which corroborated the victim's testimony about what occurred that night. The nurse testified that, when she saw the victim, she was shaking and crying so much that she could hardly talk. As the victim spoke with the nurse, Howell called the victim's cell phone, but she did not answer. When asked to describe the victim's demeanor and what she told her had occurred, the nurse testified:

> [The victim] said that [Howell] had put his fist in her mouth to try to make her be quiet, and so she had some scratches on the inside of her mouth that were there. She had a scratch on her upper lip, a bruise on her left jaw, scratches on her upper back and mid back, and some redness on her chest. There was also a scrape on her left knee . . . . Her inner lip was bruised she said from punches to her face.

At the end of the interview, the nurse instructed the victim on what to do if she experienced problems with her pregnancy. Later that day, the nurse called the police department to ensure the victim had arrived.

The officer who spoke with the victim after her visit at the medical center also testified at trial and corroborated her testimony about what occurred that night. According to the officer, the

victim "looked disheveled, her face was swollen on the left side," her chin had an obvious dark circular bruise, and she had a "scratch mark right underneath her nose kind of across her upper lip." Following the interview with the victim, the officer took photographs of the victim and her injuries. These photographs of the victim, as well as photographs taken by the victim's mother two days after the incident, were admitted into evidence. The officer also met with Howell shortly after the meeting with the victim and took several photographs of Howell. The officer testified that the injuries she saw on Howell were consistent with what the victim told the officer had happened.

Howell argues the alleged error was not harmless because "the State's evidence was weak" and included charges it could not "make stick," as evidenced by the jury finding Howell not guilty of three of the four felony charges. That Howell was acquitted of felony stalking, attempted strangulation, and second degree kidnapping does not demonstrate that the alleged error had a nonminimal probative impact on the jury's guilty verdict for felony domestic battery.

Howell also asserts "the rest of the State's evidence was not compelling" because "the police investigation was lacking." Howell attempts to bolster his argument by arguing the officer did not have "physical evidence tying Howell to the apartment on the day of the incident." Howell's argument is unpersuasive. The lack of physical evidence from Howell does not diminish the strength of the State's testimonial evidence, nor does it directly undermine any evidence presented. The State has met its burden of demonstrating any alleged error regarding the exclusion of the question and answer about whether Howell had seen his child was harmless.

## C.    Sentence Review

The district court imposed a unified sentence of fifty years, with a minimum period of confinement of ten years, for felony domestic battery with a persistent violator enhancement. Howell argues his sentence is excessive under any view of the facts because the district court did not adequately consider the following mitigating factors: "the instant offense's connection to the toxic relationship" he shared with the victim; his difficult childhood; the lack of opportunities he had to "get programming or treatment" during his previous incarcerations; and his "commitment to his family." The State responds that the district court properly weighed the sentencing factors and asserts Howell has failed to show the district court abused its sentencing discretion. Howell has failed to show the district court abused its sentencing discretion.

Sentencing is a matter for the trial court's discretion. Where a sentence is not illegal, the appellant has the burden to show that the sentence is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). Our role is limited to determining whether reasonable minds could reach the same conclusion as the district court. *State v. Biggs*, 168 Idaho 112, 116, 480 P.3d 150, 154 (Ct. App. 2020).

Applying the foregoing standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion. The district court identified the correct legal standards, correctly perceived sentencing as a discretionary decision, acted within the boundaries of its discretion, and exercised reason when imposing Howell's sentences. Howell has failed to show the district court abused its sentencing discretion or that his sentence is excessive.

## IV.

## CONCLUSION

Howell has failed to show the district court erred in determining that, if his question to the victim were permitted, it would have opened the door to other inadmissible Rule 404(b) evidence. Even assuming error in the district court's evidentiary ruling, any error was harmless. Additionally, Howell has failed to show the district court abused its sentencing discretion. Accordingly, Howell's judgment of conviction and unified sentence of fifty years, with a minimum period of confinement of ten years, and his judgment of conviction for misdemeanor false imprisonment are affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.